ROBERT ORR & CO. *v.* GREAT AMERICAN INDEMNITY CO.

(*Nashville*, December Term, 1938.)

Opinion filed Feb. 18, 1939.

J. O. BASS and BASS, BERRY & SIMS, all of Nashville, for Robert Orr & Co.

John T. McCall, of Nashville, for Great American Indemnity Co.

Mr. Justice McKinney delivered the opinion of the Court.

By the bill complainant seeks a decree against defendant on a mercantile burglary insurance policy, and the chancellor entered a decree in favor of complainant for the amount sued for. The Court of Appeals reversed the decree of the chancellor and dismissed the bill. The cause is in this court upon the petition of each party for a writ of *certiorari,* which has heretofore been granted and argument heard.

The complainant is a Tennessee corporation, and for some years has conducted a large wholesale grocery business at 164-168 Second Avenue North, Nashville. Complainant had constructed in the building which it occupies a brick fireproof vault, having an outside steel door one-half inch thick with a combination lock thereon. Inside of this vault there is located a small steel fireproof safe, the outer doors of which are one-sixth of an inch thick, and which was equipped with a combination lock. This lock originally had four tumblers, but sometime before the policy here involved was issued complainant had three of said tumblers removed so that the dial on the lock would have to be turned to only one particular number in order to open the safe. Inside this safe complainant kept a small metal box or chest, equipped with a key lock, within which it kept its money.

On the night of March 23, 1934, while the policy sued on herein was in force, some unknown person entered said building by prying up the skylight on the roof,

drilled a hole in the lock on the vault door at the proper place, punched the lock in, and in that manner gained entrance to the vault. He thereupon effected an entrance into the safe by manipulating the lock on its doors. He then pried open the metal box or chest with some tool and extracted therefrom $935.72 in money. It is conceded that this was the work of an expert, and was not an inside job. The policy also indemnified the insured against damage to the vault door, which was $13.75. The chancellor entered a decree for these two sums, together with interest and costs.

The pertinent provisions of the policy are as follows:

"I. To Indemnify the Assured For All Loss By Burglary, which shall mean the felonious abstraction of any of such insured property from within the insured part (as specified in Item 8 of the Declarations) of such safe or vault, by any person or persons making felonious entry into such safe and such insured part thereof, and also into the vault, if any, containing such safe, when all doors of such safe and vault are duly closed and locked by all combination and time locks thereon; provided that such entry shall be made by actual force and violence of which there shall be visible marks made by tools, explosives, electricity, gas or other chemicals, upon the exterior of (a) all of said doors of such safe and of the insured part thereof and of the vault, if any, containing such safe, if entry is made through such doors; or (b) the top, bottom or walls of such safe and of the insured part thereof and of the vault, through which entry is made, if not made through such doors. If only the vault and not the safe, if any therein, is so entered, the Company's liability shall not be greater than the

respective amounts stated in Section (e) of Item 8 of the Declarations; . . .

"C. The Company shall not be liable (unless insurance is specifically provided in Section (a) or (e) of Item 8 of the Declarations) for loss of property from within any safe containing a chest or compartment of any description, unless both the safe and the chest or compartment shall have been entered in the manner specified in Paragraph I; nor shall the Company be liable (unless insurance is specifically provided in Section (e) of the said Item 8) for loss of property from within any vault containing a safe, or from within a safe in a vault, unless both the vault and the safe shall have been entered in the manner specified in Paragraph I.

"D. The Company shall not be liable for loss or damage; . . . (3) effected by opening the door of any vault, safe or chest by the use of a key or by the manipulation of any lock; . . ."

 The defendant denied liability upon the ground that it did not appear that the entry was made into the safe by actual force or violence of which there shall be visible marks made by tools, explosives, gas or other chemicals, upon the exterior of the doors of said safe. This defense would probably prevent a recovery if it was the theft from the safe rather than from the vault that was covered by the policy. The important distinction to be borne in mind is the fact that this class of insurance is not written to cover the contents of a safe within a vault. The local agent of defendant testified that it did issue such policies, but, upon cross-examination, was forced to admit that all companies writing burglary insurance had uniform rates; that local agents in writing such risks were limited to the provisions set

forth in the manual issued by the National Bureau & Casualty Underwriters, and that its manual makes no provision for indemnifying against loss of money in a safe within a vault. This witness, furthermore, admits, in effect, that he is not familiar with this character of insurance, and that other employees in his office have charge of this branch of his business. The terms of the policy, as well as the testimony of J. H. Bandy, an insurance agent well versed in this character of insurance, makes it clear that where the money is kept within a vault, whether within or without a safe, the risk is based upon the classification of the vault. If there is no vault and the money is kept in a safe, the risk is based upon the classification of the safe. We quote from the testimony of Mr. Bandy as follows:

"Q. Mr. Bandy, is there a manual of the National Bureau of Casualty and Surety Underwriters which governs as to rates for mercantile safe burglary policies of insurance of that character? A. Yes, sir.

"Q. Do most of the major companies writing insurance of this class follow that manual? A. Yes, sir.

"Q. Is that a standard that they go by? A. Yes; most of the companies use the same manual.

"Q. So that there will be uniformity of rates? A. Rates on burglary insurance are generally uniform.

"Q. Assuming, Mr. Bandy, that Robert Orr & Co. kept money belonging to it in a small metal box with a key lock, which could be picked up and carried away by any ordinary man, and that this box was kept inside the safe in the vault, what rating would be applicable to that situation? A. It would be a B rating, whether there was a box there or not; Class B. Class B is a vault constructed of brick, concrete, granite, tile, iron or

steel, and having an iron or steel door equipped with a combination lock. In other words, nothing is said about the thickness of the walls or of the door in that case. In other words it is what we call a fireproof vault.

"Q. Well, this vault of Robert Orr & Co. belongs to that classification? A. Yes.

"Q. Fireproof vault? A. Yes; what we call B classification.

"Q. What about the effect of the safe inside the vault? A. Well, the safe would be the same classification, provided it was equipped with a combination lock.

"Q. Well, would the fact that the safe was inside of the vault make any difference in the classification? A. No; it would take the better classification of the vault or safe. In other words, if it was a C vault and B safe you would have a C classification on your insurance.

"Q. Well is C classification a better classification than B? A. Yes.

"Q. That has a lower premium? A. It would take a lower premium, yes; or vice versa, if it was a B vault and C safe you would get a C classification.

"Q. As I understand you, having a safe that falls within a B classification, in a vault belonging to the B classification it doesn't make any difference in the rate? A. It doesn't make any difference; no, sir.

"Q. Suppose this safe had been outside of the vault, what classification would it come under if it had a combination lock? A. I am not confident about that combination on the safe, I doubt whether it would be considered a combination, but if it was outside there with a combination lock it would be a B classification, take a B classification.

"Q. Well, assuming that the safe inside of this vault

did not have a combination lock, or that it had a combination lock but that the tumblers had been removed so that by merely turning the dial to a certain figure, say 100, the handles kept raised, the doors opened—with the safe inside the vault, that made no difference in the classification, you say? A. No, it wouldn't make any difference in the classification, because you have a B vault there.

"Q. And with that kind of a safe, or rather a safe with the lock in that condition in writing the insurance for the purpose of classification of rates, that safe might be disregarded? A. You could disregard the safe entirely.

"Q. And I believe you said it would be disregarded any way unless the safe came in a better classification than the vault? A. That is right."

On cross-examination, Mr. Bandy testified as follows:

"Q. As far as the manual specifies then if there is a Class B safe inside a Class B vault, and it is understood that the money will be kept in the safe inside the vault, there is nothing to prevent a company from granting a different rate on account of that double protection of two Class B— A. Yes; you couldn't do that under the manual.

"Q. Will you read there where it says you cannot do that? A. It gives the classifications of the vaults and the classifications of the safe.

"Q. Does it have anything in that manual as to classification relating to a safe inside of a vault? A. I wish that it did.

"Q. It does not? A. No. sir.

"Q. So the manual does not attempt to touch the ques-

tion of rates in a situation where there is a safe inside a vault, does it? A. No; but no company—

"Q. Just answer my question. A. The National Bureau of Casualty & Surety Underwriters would not permit a variation from the manual by any company that uses the manual."

This testimony is not contradicted, except by the local agent as referred to above, and if wrong it stands to reason that defendant would have introduced some qualified witness to correct it.

The carelessness and inefficiency of the local agency of defendant is responsible for this controversy. The policy as originally issued simply covered loss from theft of money in a fireproof safe, when it should have covered money in the vault.

The vault was rated in Class B, while the safe was not rated so high. In this situation the Home Office of defendant wrote the Nashville Office that a mistake had been made in the premium charged; that on the safe described in the policy the rate should be higher. Thereupon, in order to correct the mistake and bring the risk within Class B, the local agency amended the policy by adding the following endorsement, a copy of which was mailed to the Home Office, to-wit:

"It is understood and agreed that Safe #1 described under Item #10 is a semiburglar proof safe being contained in a brick and steel vault, the outside door is one-half inch solid steel exclusive of bolt work, the two inside doors are one-eighth inch thick and the vault is locked with Hall's combination lock #88541 and is located #164-66-68 Second Avenue, North, Nashville, Tennessee."

After this correction, the Home Office was satisfied with the rate as charged.

By the foregoing endorsement the risk was changed from that on money in the safe to that on money in the vault, and the character of the safe and the manner of its entrance became immaterial.

It will be observed that Paragraph I of the policy, set forth above, indemnifies the insured "for all loss by burglary, which shall mean the felonious abstraction of any of such insured property from within the insured part (as specified in Item 8 of the Declarations) of such safe or vault," depending, according to our interpretation, on whether it is the contents of the safe or the vault that is insured as indicated in Item 8. Section (a) of Item 8 indemnifies against loss of property in safe, while Section (e) in Item 8 indemnifies against loss of property in vault.

Item 10 of the Declarations provides the form to be filled in describing the safe; while Item 11 of the Declarations provides the form to be filled in describing the vault. So that where there is a vault Section (e) of Item 8 and Item 11 of the Declarations are to be filled in. On the other hand, where there is no vault, but a safe, Section (a) of Item 8 and Item 10 of the Declarations are to be filled in. The local agent, therefore, made the mistake of filling in the latter Items instead of the former ones.

The fact that complainant had a fireproof vault with steel door and combination lock was nowhere mentioned in the policy. To correct this error the endorsement, quoted above, was attached to the policy before the money was stolen. The effect of this endorsement was to change the coverage from money in the safe to money in the

vault. Condition C of the policy, quoted above, also supports the foregoing construction of the contract, its provision being that the company shall not be liable for loss of property within a safe unless it has been entered in the manner specified in Paragraph I; namely, by actual force and violence of which there shall be visible marks "unless insurance is specifically provided in Section (e) of the said Item 8." Being of the opinion that the endorsement operated to bring the coverage within Section (e) of Item 8, it follows that Condition C has no application.

In 5 Couch on Insurance, 4234, sec. 1184c, it is said: "The reason for the restrictions in burglary policies requiring visible evidence of forcible and violent entrance is, it has been said, to protect the companies from what are commonly known as 'inside jobs,' and from the frauds that would inevitably result but for such protection."

In the present cause it is conceded that this was a *bona-fide* loss.

Complainant had the local agent of defendant to visit its place of business and inspect the vault and safe, and explained to him that it wished indemnity against just such a burglary as was subsequently committed. The agent by his negligence in issuing the wrong policy, and his subsequent attempt to correct his error, so confused the situation that this litigation resulted. We are unable to see any justification on the part of defendant for its refusal to pay this loss. It appears to us to be a clear case of liability both within the spirit and the letter of the contract. It results that the decree of the Court of Appeals will be reversed and that of the chancellor affirmed with interest and all costs.